Brown vs. Brooks and others.

BROWN, Respondent, vs. BROOKS and others, Appellants.

*May 4 — May 23, 1893.*

*Burning of property through negligence: Contributory negligence of owner: Court and jury.*

1. The rule that one who is suddenly placed by the negligence of another in a situation where he must adopt a perilous alternative is not to be charged with negligence merely because he does not adopt the safest or wisest course, does not apply where the danger is simply a danger to property which has been seen and apprehended, or ought to have been apprehended, for days prior to the event.

2. Fires had been raging upon parts of an extensive marsh for several days, and defendants, to protect their hay stacks thereon, mowed the grass and burned the stubble about them. The fire so set escaped and destroyed plaintiff's hay, situated about a mile distant. Plaintiff saw the fire more than twenty-four hours before it reached his hay, and apprehended danger therefrom, but instead of mowing or burning the grass about his stacks attempted to haul the hay away. *Held,* that whether he used proper care and made all reasonable efforts to save his hay, in view of the seen danger, and whether, if not, his failure to do so directly contributed to the loss, were questions for the jury, and it was error to charge that his failure to remove the grass around his stacks was not negligence.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action to recover the value of hay and grass destroyed by fire. A sufficient statement of the facts is as follows:

Horicon marsh covers an area of about fifteen miles in length by three miles in width, in Dodge county, and is

used only for the raising of hay.   The season of 1891 being
dry, a number of farmers in the vicinity leased portions of
the marsh for the purpose of cutting the hay thereon.   The
plaintiff leased something over sixty acres for this purpose,
and cut the hay and stacked it thereon to the amount of
about forty tons.   The defendants, *Brooks, Fairbanks,* and
*Odekirk,* also severally leased tracts of land upon the marsh,
and cut and stacked hay thereon.   The defendants' stacks
were in close proximity to each other, and were about a
mile south of plaintiff's stacks.   The defendants were not
jointly interested in the hay, but each cut and stacked his
own hay.

The plaintiff's stacks were destroyed on Saturday, Sep-
tember 26, 1891, by a prairie fire which swept over the
marsh from the south.   The evidence shows that there had
been fires on the marsh for some days before the last-men-
tioned date, though at some distance from the stacks of all
the parties.   On Thursday of the same week the defend-
ants, *Brooks, Fairbanks,* and *Odekirk,* each mowed a large
belt of grass around their respective stacks, and at night
they proceeded to burn a wide belt of stubble and grass
around each stack, for the purpose of protecting them
against the fires which they could see at some distance to
the south.   They seemed to have helped each other at this
work, and had a number of men and boys to assist with
water and wet bogs, etc., to fight the fire and keep it
within bounds.   They commenced with *Brooks'* stacks, then
took *Fairbanks',* and lastly *Odekirk's.*   Before commencing
at *Odekirk's* stacks, *Brooks* was obliged to leave, and did
not participate personally in the *Odekirk* fire.   There was
some evidence of admissions made by *Brooks* to the effect
that there was an agreement among defendants to burn
around all their stacks, thus making it a joint enterprise.
The burning was successfully accomplished, and all the men,
except *Odekirk* and his hired man, left the grounds at about

3 A. M. Friday, the fires being apparently entirely out. At about 7 A. M. Friday, *Odekirk* discovered some fire smouldering in the peat south of his stack. He fought it all day Friday, with the aid of two men, and at 8 o'clock Friday evening went home, supposing that the fire was entirely out. During this day the wind was in the northwest, and the fire consequently worked to the south, away from plaintiff's stacks.

The plaintiff testifies that he saw this fire spreading from *Odekirk's* stack on Friday. He went to his stacks at about 10 o'clock A. M. He was informed in the morning that there was a fire down around *Odekirk's* stack, and that it had got into the peat. He thought there was danger, and he thought he would get his hay out on that account. He did not attempt to burn or mow around his stacks, but, with several men and teams, proceeded to haul his hay away. On Saturday the wind had shifted to the southeast, and a fire was seen approaching from the south, which destroyed plaintiff's stacks at about 2 o'clock P. M. Plaintiff had removed several loads on Saturday morning, but had not attempted to burn around the stacks or take any other means of prevention, except to attempt to plow a single furrow. There was some evidence on the part of the defendants that the fire which destroyed plaintiff's stacks was an independent fire, not starting from any of the fires kindled by them.

At the close of the plaintiff's evidence a motion for nonsuit was made and overruled. A special verdict was called for, which, with the answers of the jury, is as follows: "(1) Was the fire set at *Odekirk's* stacks in pursuance of a joint arrangement and understanding between the defendants that they would work and act together in burning around their several stacks? *Answer.* Yes. (2) Did the defendant *Fairbanks* countenance and approve of and aid in burning around the stacks of the defendant *Odekirk?*

*A.* Yes. (3) Did the defendant *Brooks* countenance and approve of the burning around the defendant *Odekirk's* stacks, and intend to participate in this act if he had not gone to look after his horses? *A.* Yes. (4) Was it an act of ordinary care and prudence to attempt to burn around the defendant *Odekirk's* stacks at the time such burning was done? *A.* No. (5) Did the defendants, or such of them as participated therein, use ordinary care and prudence in setting the fire and burning around the defendant *Odekirk's* stacks? *A.* No. (6) Did the defendant *Odekirk* use ordinary care and prudence in watching the fire at his stacks after it was set, and preventing it from getting beyond control? *A.* No. (7) Did the defendant *Fairbanks* use ordinary care and prudence in watching the fire at the defendant *Odekirk's* stacks after it was set, and preventing it from getting beyond control? *A.* No. (8) Did the defendant *Brooks* use ordinary care and prudence in watching the fire at the defendant *Odekirk's* stacks, and preventing it from getting beyond control? *A.* No. (9) Did the fire set at the defendant *Odekirk's* stacks get beyond control, spread over the marsh, and cause the destruction of the plaintiff's hay and grass? *A.* Yes. (10) Was the fire set at the defendant *Odekirk's* stacks the direct and proximate cause of the burning of the plaintiff's hay and grass? *A.* Yes. (11) Did another fire arise in the forenoon of Saturday, September 26, 1891, north of where the *Odekirk* fire swept across the marsh on Friday, and not caused by the *Odekirk* fire, which extended to and burned the plaintiff's hay and grass? *A.* No. (12) Would men of ordinary intelligence and prudence have reasonably expected, under all the circumstances of this case, that if the fire at *Odekirk's* stacks got beyond control it would extend to and destroy the plaintiff's hay and grass? *A.* Yes. (13) Could the plaintiff, by the exercise of ordinary care and prudence, have saved his hay and grass, and prevented the same from being burned, after he saw or knew that there

was danger of its destruction by fire? *A.* No. (14) What was the plaintiff's hay and grass, destroyed by fire on Saturday, September 26, 1891, reasonably worth? *A.* $200."

Judgment for the plaintiff was rendered on the verdict, and defendants appeal.

*Maurice McKenna,* for the appellants, argued, among other things, that the plaintiff was guilty of contributory negligence preventing a recovery. Beach, Cont. Neg. secs. 19, 75; *Snyder v. P. C. & St. L. R. Co.* 11 W. Va. 37; *Ill. Cent. R. Co. v. McClelland,* 42 Ill. 355; *Doggett v. R. & D. R. Co.* 78 N. C. 311; *Toledo, P. & W. R. Co. v. Pindar,* 53 Ill. 448; *Kellogg v. C. & N. W. R. Co.* 26 Wis. 223, 245, 257. See also *Richter v. Harper,* 54 N. W. Rep. (Mich.), 768. The question whether plaintiff had been negligent and might, with ordinary and reasonable care on his part, have avoided the consequence of defendants' alleged negligence, should have been submitted to the jury. 1 Shearm. & Redf. Neg. sec. 329; *Sturgis v. Robbins,* 62 Me. 289; Whittaker's Smith, Neg. 70, note; Bishop, Non-Cont. Law, sec. 833. Every person is bound to use diligence to save himself from injury by the negligent act of another. *Little v. McGuire,* 43 Iowa, 447; *Keirnan v. Heaton,* 69 id. 136; *Raridon v. Cent. I. R. Co.* id. 527; *McKenna v. Baessler,* 53 N. W. Rep. (Iowa), 103. "A person may be charged with contributory negligence in the lawful use, management, and control of his own property on his own land, which will defeat his recovery in an action for the destruction of the same by the negligence of another." *Murphy v. C. & N. W. R. Co.* 45 Wis. 222, 238; *Ross v. B. & W. R. Co.* 6 Allen, 87.

For the respondent there was a brief by *Duffy & McCrory,* and oral argument by *J. H. McCrory.*

WINSLOW, J. We are satisfied that the motion for a nonsuit was properly overruled. Careful perusal of the evidence leads us to agree with the circuit judge in his con-

clusion that there was sufficient evidence to go to the jury
on the questions of the alleged negligence of the defend-
ants in starting and handling the *Odekirk* fire, and whether
it was the *Odekirk* fire which destroyed plaintiff's hay, as
well as on the question whether the burning was a joint
undertaking, so as to render *Brooks* liable for the acts of
the others, though not personally assisting at the *Odekirk*
fire. It was not of itself an unlawful or negligent act for
the defendants to burn the grass around their stacks for
the purpose of preventing a prairie fire from destroying
them. If such fire is kindled at a suitable time and place,
and due and reasonable diligence be taken to prevent its
spreading to the property of others, there is no actionable
negligence. *Fahn v. Reichart*, 8 Wis. 255.

A question of some difficulty arises, however, upon the
instructions given and refused by the court upon the ques-
tion of contributory negligence of the plaintiff. The thir-
teenth question of the special verdict was as follows:
" Could the plaintiff, by the exercise of ordinary care and
prudence, have saved the hay and grass, and prevented the
same from being burned, after he saw or knew that there
was danger of its destruction by fire?" The question was
answered in the negative. The court charged the jury
upon this question as follows: " The failure of the plaintiff
to remove the dry grass around his property, in order to pre-
vent the spread or communication to it of fire set or spread
by the fault or misconduct of others, was not wrongful and
improper on his part,— not culpable omission of duty, by
which he may have been said to have co-operated in the
destruction of his own property. The law imposes no such
duty on him. In the exercise of his lawful rights, every
man has a right to act on the belief that every other per-
son will perform his duty and obey the law, and it is not
negligence to assume that he is not exposed to danger
which can only come to him through a disregard of law on

the part of some other persons.  As there is a natural presumption that every one will act with due care, it cannot be imputed to the plaintiff as negligence that he did not anticipate culpable negligence on the part of the defendants, if there was any." This was substantially an instruction that the plaintiff's failure to remove or attempt to remove the grass around his stacks, by mowing and burning, was not negligence.  Is this correct?

The general and frequently applied rule is that the question of negligence or not is for the jury.  There are exceptions to the rule, and where the facts are undisputed it frequently becomes the duty of the court to decide the question.  It is practically claimed by plaintiff that this is such a case.  It is said that it is a case where plaintiff's property was placed in sudden and imminent danger by the negligence of defendants, and that negligence is not to be imputed to plaintiff because he made an error in judgment and attempted to remove his hay rather than to protect it by burning around the stacks.  The principle that one who by another's negligence is suddenly placed in a situation where he must adopt a perilous alternative, does not adopt the safest or wisest course, and is injured, is not to be charged with negligence, is well recognized.  It is plain, however, that this case does not come within this principle.  The rule is based upon the fact that the plaintiff encounters, without warning, a sudden emergency and imminent peril, when cool judgment cannot be expected nor demanded.  Manifestly, it cannot and ought not to apply where the danger is simply a danger to property which has been seen and apprehended, or ought to have been apprehended, for days prior to the event.  Here there had been fires raging upon parts of the marsh for days,— the plaintiff himself saw the fire which escaped from the *Odekirk* stack more than twenty-four hours before the fire reached his ground, and apprehended danger therefrom.  There

was ample time for him to exercise his judgment and discretion. It was clearly not a case of a sudden emergency and peril.

But it is claimed that the instruction is justified by the principles laid down in the case of *Kellogg v. C. & N. W. R. Co.* 26 Wis. 223. It is well to note, in the first place, the exact question in issue and decided in that case. It was a case where fire was kindled in the dry grass and weeds on the right of way of a railroad by sparks from an engine, and escaped to plaintiff's land, and was carried by dry grass and weeds thereon to the stacks and barns of the plaintiff. The trial court charged that it was for the jury to say whether the plaintiff was negligent in leaving the dry grass and weeds on his own land, and refused to instruct the jury that it was *negligence per se*, which would defeat a recovery, for plaintiff to leave the grass and weeds uncut on his land. It was held that there was no error in thus instructing the jury. These were the points actually decided so far as necessary to be stated in this connection, and it is manifest that they do not reach the question here raised. It is true that in the opinion of the court language is used which seems to indicate that negligence is not to be imputed to a man so long as he uses his own property in a lawful manner, whatever may be the negligence of others; but that language was not essential to the questions involved and has been in effect disapproved by this court in *Murphy v. C. & N. W. R. Co.* 45 Wis. 222.

Furthermore, it is evident from the opinion filed upon the motion for rehearing in the *Kellogg Case* that the principles laid down were not intended to have any such sweeping effect as is contended for in this case. It is there said (page 257): "A man in his senses, in face of what has been aptly termed a 'seen danger,'— that is, one which presently threatens and is known to him,— is bound to realize it, and to use all proper care and make all reasonable efforts to

Brown vs. Brooks and others.

avoid it, and if he does not it is his own fault; and, he having thus contributed to his own loss or injury, no damage can be recovered from the other party, however negligent the latter may have been." A distinction is then drawn between this "seen danger" and a danger which exists in anticipation merely, and the danger in that case of a possible fire at some time was held to be one of anticipation merely. The danger in this case was as certainly a "seen danger" as any which could be imagined; and, on the basis of the law as finally declared in the *Kellogg Case* itself, the rule here must be that it was the duty of the plaintiff to use all proper care and reasonable effort — namely, the care and effort which reasonably prudent men under like circumstances would use — to save his hay from fire; and whether he did so or not, and whether, if not, his failure so to do directly contributed to the destruction of his hay, was a question for the jury to decide, and they should not have been instructed, as matter of law, that the failure to remove the grass around the stacks was not negligence. This rule is substantially recognized in *Murphy v. C. & N. W. R. Co.* 45 Wis. 222, and *Mills v. C., M. & St. P. R. Co.* 76 Wis. 422. This substantial error necessitates a reversal.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.

A note is published with the above case in 21 L. R. A. 255, on the question of liability for setting fires which spread to the property of others.

— REP.